Battle, J.
 

 The only question presented by the pleadings, arises upon the construction of the 5th clause of the will of the testator, "William Ward, which is in the following words :
 
 “ My
 
 will and desire is, that my negroes shall be divided between my wife Martha, and all my children, in the following manner : I desire, and my will is, that the negroes, Mary, Jo, Amanda, Oscar, and Turner, whom I have given to my son-in-law, Thomas W. Eiddick, be deducted from his portion of an equal division of my negroes, and after that deduction, then I desire my negroes to be equally divided between my wife Martha, and all my children; my will and desire being, that my son-iu-law, Thomas W. Eiddick, should have an equal share of my negroes, by regarding all the negroes already given to him, as a part of his share, or that he shall have, in value, equal to the negroes already given to him, and mentioned above, less in his share than my wife and my other children/” The slaves mentioned in this clause had been given to the defendant, Thomas W. Eiddick, by the testator, by a deed, dated in August, 1853, and the defendant contended that in the division, directed by the will, these slaves were to be valued to him as of the time when they were given, while the other parties insist that they ought to be valued as of the time of the testator’s death.
 

 It is conceded by the counsel for the plaintiffs, that if the testator had died intestate, then the slaves, given to the de
 
 *24
 
 fendant, would have had to he accounted for as advancements, according to their value at the time of the gift, upon the principle settled in the leading case of
 
 Stallings
 
 v. Stallings, 2 Dev. Eq. Rep. 298. That case was decided upon the acts of Assembly, which will be found embraced in the Rev. Code, ch. 64, sec. 2, and it has been confirmed by repeated subsequent adjudications.
 

 But while the counsel admits that such is the construction of the law, in providing for an equal division of the property of an intestate among his next of kin, he insists that the present case must be governed solety by the language of the will, and that the evident meaning of the words used by the testator, requires a division of the slaves, in such manner, that those given to the defendant shall be accounted for by him, as if they were just set apart for him, and of course according to their present value.
 

 The counsel, for the defendant, admits that the valuation of the slaves, which the testator had given him, must be fixed xxpon a fair construction of the will alone, but he contends that, as the testator manifestly designed to provide for an equal division of his slaves between his wife and children, and as the law contemplates the same thing in the distribution of an intestate’s estate among his wife and children, what has been approved and settled as the proper means to secure equality in the latter case, ought to be applied to the former. Hence, the counsel infers that where an advancement to one of the children is directed to be accounted for, it must be valued as of the time when it was made, and he refers to the case of
 
 Spivey
 
 v. Spivey, 2 Ire. Eq. Rep. 100, as favoring this construction.
 

 "We think that the force of this argument cannot be resisted. The testator had the right, undoubtedly, to have directed a division, according to the rule contended for by the plaintiff, but as he did not do so, in such terms as leave no reasonable doubt that such was his intention, we cannot have a better guide for the equality, which he clearly did intend, than that which the law provides for a strongly analogous «ase.
 
 *25
 
 Indeed, the aet of Assembly may be regarded as making a general will for all intestates, and what the Court has settled as a fair construction of that, ought to be followed whenever any individual testator has made a similar disposition, by will, of his property, or any part of it.
 

 A decree may be drawn directing a division of the testator’s slaves, upon the principle herein declared.
 

 Per Curiam, Decree accordingly.